Justyn REASONER, by his next friend,
Robert REASONER, Appellant,

v.

Stephen MEYER, Gary Bennerotte,
Worth County R–III School
District, Respondents.

No. WD 40333.

Missouri Court of Appeals,
Western District.

March 7, 1989.

Jerold L. Drake, Grant City, for appellant.

William A. Lynch, Lori A. Leu, Kansas City, for respondents.

Before COVINGTON, Special Judge, and NUGENT and GAITAN, JJ.

GAITAN, Judge.

Plaintiff Justyn Reasoner appeals from the circuit court's ruling on his petition for review in which the court upheld his disciplinary suspension from the Worth County R–III School District. We affirm the decision of the trial court.

Eight grade pupil Justyn Reasoner's suspension arose from a November 10, 1987, schoolyard fight with seventh grade student Carl Hampton. Bus driver Bill Staton noticed the boys scuffling and shoving each other, and he saw Carl kick Justyn across the stomach. Mr. Staton intervened and asked the boys to explain their behavior. Carl said that Justyn had cut him. He pulled up his shirt and showed Mr. Staton a small scratch. Mr. Staton asked Justyn what he had used to cut Carl, and Justyn pulled an object out of his pocket called a "spike bracelet," which is a leather strap

with carpet tacks sewn into it which fits around one's fist.

Mr. Staton escorted Carl and Justyn to the elementary principals' office, reported the incident to the principal, Rose Findley, and left the spike bracelet with her. Mrs. Findley contacted Steven Meyer, the boys' junior high principal, explained the situation and gave Mr. Meyer the spike bracelet.

Mr. Meyer gave Carl and Justyn an opportunity to explain their conduct. Apparently the fight culminated an argument that began during the school day. Each boy blamed the other for starting the fight. Justyn denied having struck Carl with the spike bracelet, claiming that Carl had fallen into it as he tried to kick Justyn. He admitted, however, that he had used the device to attempt to scare Carl off. Mr. Meyer saw a couple of small punctures and a small amount of dried blood on Carl's side.

Mr. Meyer contacted both boys' parents that afternoon. He met with Mrs. Hampton and with Mrs. Reasoner, who was a teacher at the school. He also discussed the incident and the proposed discipline in a phone conversation with Justyn's father. The next day he sent both boys' parents a letter notifying them of his decision.

Mr. Meyer determined that Justyn's conduct violated the assault provision of the district's disciplinary code. That provision requires a twenty-day suspension for a first offense. Mr. Meyer decided to suspend Justyn for ten days, and recommended that the superintendent of schools, Gary Bennerotte, suspend Justyn for an additional ten days. Mr. Meyer explained that he did not personally impose a twenty-day suspension because he was not authorized to suspend students for more than ten days. Accordingly, he recommended the additional ten-day suspension to the superintendent so that the total suspension would comply with the disciplinary code's recommended twenty-day suspension for assault.

Mr. Bennerotte agreed with Mr. Meyers' recommendation and decided to suspend Justyn for an additional ten days. Later, however, he rescinded the additional suspension pending a hearing with Justyn, his parents and his attorney. Before the hearing Justyn completed the first ten days of his suspension. Following that hearing, Mr. Bennerotte determined that Justyn should be suspended for an additional ten days.

The Reasoners appealed Mr. Bennerotte's decision to the Worth County R–III School Board. Counsel for both the school district and for the Reasoners presented evidence at the hearing, and examined and cross-examined witnesses. The board affirmed the suspension. The Reasoners petitioned the circuit court for review of the school board's decision. The court upheld the decision and this appeal followed.

 Plaintiff's first argument on appeal is that the school district failed to comply with due process of law in imposing the suspension. Plaintiff also argues that no substantial evidence supported the school board's finding that Justyn committed an assault. Additionally, the parties dispute the characterization of the issues before us. Plaintiff argues that the suspension at issue is the total twenty days of punishment, while the defendant school district argues that only the second ten-day suspension is before us on this appeal. We believe that only the second ten-day suspension is at issue.

In letters to the Reasoners explaining the discipline they had imposed on Justyn, both Mr. Meyer and Mr. Bennerotte characterized the punishment as a twenty-day suspension. Both testified at the hearing that under the school's disciplinary code, Justyn's conduct required a twenty-day suspension. However, only ten of those days could have been and were imposed by the principal as specified in § 167.171.1, RSMo 1986. The statute allows both principals and superintendents to summarily suspend and states as follows:

1. The school board in any district, by general rule and for the causes provided in section 167.161, may authorize the *summary suspension* of pupils *by principals* of schools for *not to exceed ten school* days *and* by the *superintendent*

of schools for *not to exceed ninety school days.* (emphasis added)

By the language of the statute being in the conjunctive, the statute contemplates that a summary suspension by a principal is to be treated absolutely apart from the separate suspension by a superintendent. Further, Mr. Meyer acknowledged that he could only impose a ten-day suspension. In his letter to Justyn's parents he stated: "Realizing principals cannot impose a summary suspension for more than ten days, I have conferred with Dr. Bennerotte and he, as superintendent, is extending the suspension to 20 days." There is no restriction in the statute against both a principal and a superintendent imposing two separate suspensions for one offense. Mr. Meyer imposed ten days and Mr. Bennerotte only imposed the additional ten days for a total suspension of twenty days.

The statute does not provide for an appeal of a suspension by a principal for ten days or less. Although any suspension must be reported to the superintendent, there is no provision for appealing a summary suspension by a principal of ten days or less to the school board or the courts. Section 167.171.1, RSMo 1986 states:

> In case of a suspension by the superintendent for *more than ten school days,* the pupil or his parents or others having his custodial care may appeal the decision of the superintendent to the board or to a committee of board members appointed by the president of the board which shall have full authority to act in lieu of the board. Any suspension by a principal shall be immediately reported to the superintendent who may revoke the suspension at any time. In event of an appeal to the board, the superintendent shall promptly transmit to it a full report in writing of the facts relating to the suspension, the action taken by him and the reasons therefor and the board, upon request, shall grant a hearing to the appealing party to be conducted as provided in section 167.161. [Emphasis added.]

■ The plaintiff argues that the procedures that the board followed in Justyn's hearing did not provide him with adequate due process protection for imposing a twenty-day suspension. We disagree. The procedures were more than adequate because the only suspension at issue is a ten-day suspension, and minimal due process protection would suffice. However, the school district exceeded the minimal due process requirements and gave Justyn the benefit of two hearings at which he had the benefit of counsel, and the opportunity to present evidence and cross-examine the school district's witnesses.

The United States Supreme Court, in *Goss v. Lopez,* 419 U.S. 565, 574, 95 S.Ct. 729, 736, 42 L.Ed.2d 725 (1975), recognized that when a state chooses to provide a class of its citizens with a free public education, it must provide students with some measure of due process before imposing even a ten-day suspension. Both the Missouri Constitution and the Missouri Statutes provide persons up to the age of twenty-one the right to a free public education. Consequently, the school district may not suspend a student without affording him procedural due process. Mo. Const. Art. IX, § 1(9); § 160.051, RSMo 1986.

Once it is established that an interest is subject to due process protection, the question remains what process is due. *See Goss,* 419 U.S. at 577, 95 S.Ct. at 738. *Goss* established that due process requires at a minimum that school officials, before imposing a suspension of ten days or less, provide the student with notice of his alleged misconduct and give him an opportunity to explain his version of the facts before discipline is imposed. *Id.* at 582, 95 S.Ct. at 740. The Court noted, however, that suspensions of longer than ten days would probably require more formal procedures than those described in its opinion. *Id.* at 584, 95 S.Ct. at 741. The Court also stressed that the procedures it had outlined provided the minimum procedures that the Constitution requires to prevent erroneous deprivation of rights. *Id.*

*Sykes v. Sweeney,* 638 F.Supp. 274 (E.D. Mo.1986), supports the proposition that Justyn received full due process rights. In *Sykes,* the school board suspended a student for ninety days. He was represented

by counsel at the hearing, but the board did not allow counsel to examine witnesses or otherwise participate in the hearing. The court held that because the school board followed all of the procedures required by § 167.171, it did not violate the student's due process rights.

Although the procedures that Mr. Meyer followed may not have been sufficient under the statute to impose a twenty-day suspension, they were adequate to support a ten-day suspension. Mr. Meyer explained to Justyn the nature of his misconduct, and he provided Justyn an opportunity to explain his version of the events. Mr. Meyer also contacted Justyn's parents to explain the incident, and he listened to their comments. He then reported his decision to the superintendent of schools. Those procedures fully complied with the provisions of § 167.171.1 and with the minimal due process requirements that *Goss* established for suspensions of ten days or less.

The due process requirements were also met in regard to the second ten-day suspension imposed by Mr. Bennerotte. In fact, the due process requirements were again enlarged by allowing a hearing with all parties and counsel in attendance for the introduction of witnesses' testimony and evidence prior to the superintendent's final decision. *Goss* does not require formal proceedings for ten-day suspension. *Goss*, 419 U.S. at 583, 95 S.Ct. at 740.

The due process requirements are found in *Goss*, the Missouri statutes, and the Worth County R–III Discipline Policy for both the hearings before the superintendent and before the board. Justyn and his parents received notice of the charges against Justyn and the facts forming the basis of the proposed suspension in writing and orally at the hearing before Mr. Bennerotte. Justyn received written notification of the time and place of the hearing before Mr. Bennerotte and a description of the procedures to be followed. The names of the witnesses and the substance of their testimony were known. Justyn also had an opportunity to present his version of the incident and to present witnesses.

It is clear that the due process requirements as set forth by *Goss*, the Missouri Statutes and Board policy were met. The goal of the due process requirements of notice and opportunity for a hearing is to prevent the erroneous deprivation of rights. *Id.* The informal process given Justyn, which fully informed him and his parents of the problem and allowed Justyn to present his version of the events, was sufficient to protect against any erroneous deprivation of his rights. *Id.*

■ Plaintiff next argues that there was no substantial evidence to support the school board's finding that Justyn committed an assault. Judicial review of this administrative decision is limited to whether the finding of the Board was reasonable or "clearly contrary to the overwhelming weight of the evidence." *Blunt v. Parker*, 495 S.W.2d 708, 712 (Mo.App.1973). The court is required to follow the credibility determination of the Board, and should afford a strong presumption of validity in favor of the Board's decision. *Hanebrink v. Parker*, 506 S.W.2d 455, 457–58 (Mo.App. 1974); *Conder v. Board of Directors of Windsor School*, 567 S.W.2d 377, 379 (Mo. App.1978).

■ The decisions of the Board and the circuit court affirming Justyn's suspension were supported by competent and substantial evidence upon the whole record. Justyn admitted his participation in the fight and the position of the spike bracelet on his hand during the fight. The evidence showed the other student sustained wounds in his side during the fight. Justyn did not deny that the spike bracelet on his hand caused the other boy's wounds. He knowingly placed the device on his hand, either before or during the fight. The cinch design of the device necessitates conscious placement and Justyn did not claim to believe the device had no potential to cause harm.

Justyn's actions fit easily within the assault provision. The discipline policy states that an assault occurs by "[a]ttempting to cause injury to another; intentionally placing another in reasonable apprehension of imminent physical injury." The facts show

that Justyn intended and succeeded in placing the other boy in reasonable apprehension of physical injury. Moreover, Justyn did physically injure the other boy. The evidence does not show that Justyn was placed in a defensive position, but that Justyn had many opportunities to avoid the confrontation.

The Board acted within its statutory discretion in establishing the discipline policy and the administrators acted within their authority in applying appropriate discipline. Justyn and his parents were well aware of the terms of the discipline policy, as they signed a form stating familiarity with the contents.

The Board, acting within its discretion, chose to believe that Justyn attempted to cause injury to another. Evidence in the record substantiates this determination. This court may not substitute its discretion for the discretion of the Board and must weigh the evidence in favor of the Board's decision. *See* § 536.140.5, RSMo 1986; *Conder,* 567 S.W.2d at 378.

Justyn's testimony that the other boy fell into the spike bracelet while attempting to kick him presents contradictory evidence. The existence of contradictory evidence does not weaken the Board's decision so long as the record shows other supporting competent and substantial evidence. While the Court must ensure the Board's decision was supported by competent and substantial evidence on the whole record, it should not be influenced by the existence of contradictory evidence. *See e.g., Kimble v. Worth County R–III Bd. of Educ.,* 669 S.W.2d 949, 952–53 (Mo.App.1984).

The judgment of the trial court is affirmed.

NUGENT, J., concurs in separate opinion.

NUGENT, Judge, concurring.

I agree with the majority's conclusion that the Worth County R–III School Board,

by suspending Justyn Reasoner for twenty days, did not erroneously deprive him of his right to a free public education. The evidence supports the board's conclusion that Justyn violated the assault provision of the disciplinary code. Moreover, I agree that the hearing that the school board eventually provided met all of the essential elements of due process. Therefore, Justyn failed to establish a violation of his constitutional right to due process. *See Sykes v. Sweeney,* 638 F.Supp. 274, 279 (E.D.Mo.1986) (plaintiff must show substantial prejudice to establish a denial of procedural due process).

I cannot agree, however, that the school authorities complied with the procedures that § 167.171 requires for a suspension for more than ten days. Despite the arguments advanced by the school board and the majority, the suspension at issue is clearly a twenty-day suspension. The majority's characterization of Justyn's suspension as only a ten-day suspension arises from a misinterpretation of § 167.171, therefore, I can concur only in the result of the majority's decision.

No dispute exists that the school authorities intended to suspend Justyn Reasoner for twenty days. He is charged with violating a provision of the school disciplinary code that requires a minimum twenty-day suspension.[1] The school principal, Steven Meyer, recognized that requirement and determined that Justyn should be suspended for twenty days. He informed the school superintendent, Gary Bennerotte, of his finding and the superintendent agreed. Both school officials advised Justyn's parents that he would be suspended for twenty days. To achieve that total Mr. Meyer and Mr. Bennerotte each suspended Justyn for ten days.

The principal and the superintendent agreed that, in accordance with the school disciplinary code, Justyn's conduct warranted a twenty-day suspension. From

---

1. The relevant portion of the code provides:
 A. *ASSAULT—STUDENT*
 Attempting to cause injury to another; intentionally placing another in reasonable apprehension of imminent physical injury.

 FIRST OFFENSE: 20–day suspension
 SECOND OFFENSE: Expulsion

this record, I must conclude that we are reviewing a twenty-day suspension. Nevertheless, although the school authorities clearly intended to impose a twenty-day suspension, they now argue that only the second ten days of that suspension now comes before us on appeal. That argument fails to comprehend the limits that § 167.171 places on the disciplinary authority of school principals and superintendents.

The majority's interpretation of § 167.171 fails to correctly discern the statute's clear purpose: to protect the due process rights of students accused of misconduct. The majority concludes that the principal's power to suspend students bears no relation to the superintendent's power of suspension; that a superintendent's decision to suspend a student should be reviewed without regard to the principal's summary suspension of the student for the same incident.

The statute provides, however, that "[a]ny suspension by a principal shall be immediately reported to the superintendent who may revoke the suspension at any time." § 167.171. That provision unmistakably contemplates a system in which the principal and the superintendent act in concert to uphold the district's disciplinary policies. Here the record shows concerted action by the two school officials. When Mr. Meyer realized that Justyn had committed an infraction that called for punishment beyond his power, he enlisted the aid of the school superintendent. He asked Mr. Bennerotte to add ten days to the suspension that he had already summarily imposed. On this record, I cannot conclude that the superintendent's decision to suspend Justyn bears no relation to the principal's decision.

Mr. Meyer acted correctly in referring the matter to the superintendent, but he exceeded his authority when he imposed punishment before he made that referral. Section 167.171.1 not only limits the princi-

pal's power of summary suspension, but it also limits his jurisdiction. In adopting § 167.171 the legislature recognized that a student accused of misconduct serious enough to warrant suspension for more than ten days is entitled to more formal procedures than those required for shorter suspensions. A school principal simply does not have the resources necessary to provide those procedures. *See Goss v. Lopez,* 419 U.S. 565, 583, 95 S.Ct. 729, 740, 42 L.Ed.2d 725 (1975). The principal's limited resources and the statute's ten-day limit on his authority to impose suspensions support an interpretation of the statute that removes the principal's jurisdiction to discipline students accused of serious misconduct.

We should not overlook the significance of the fact that the legislature amended § 167.171 after the United States Supreme Court announced its decision in *Goss v. Lopez, supra.* As the majority points out, *Goss* held that school authorities must follow minimal due process requirements before imposing a suspension for ten days or less. *Id.* at 581–82, 95 S.Ct. at 739–40 The Court cautioned, however, that the minimum protection outlined in its opinion applied only to suspensions of ten days or less, and said that longer suspensions would require more formal procedures. *Id.* at 584, 95 S.Ct. at 741. The legislature certainly knew of the *Goss* decision when it drafted the amendments to § 167.171, and certainly intended that those amendments would conform with the Supreme Court's mandate.

The legislature provided that a student charged with misconduct serious enough to warrant a suspension for more than ten days should have a right to appeal from a decision imposing punishment for such misconduct. § 167.171.1. It also provided that the suspension shall be stayed pending appeal. § 167.171.2(4).[2] Here, Mr. Meyer found that Justyn's conduct warranted a

---

**2.** That section also allows the superintendent to immediately remove a student whose continued presence in school poses a threat to persons, property, or the academic process, provided the board expedites the hearing. Here, however, Mr. Meyer admitted that Justyn's continued presence in school presented no threat to the other students. Therefore, he had no reason not to provide Justyn with an opportunity to have his suspension stayed pending appeal.

twenty-day suspension. That finding removed the matter from his jurisdiction. Because the principal had no power to impose a twenty-day suspension, he had to turn the matter over to the superintendent. Mr. Bennerotte then had the authority to issue a twenty-day suspension, which is what he intended to do.

When he imposed a twenty-day suspension, however, he also activated § 167.171.2(4)'s requirement that the suspension be stayed pending appeal. Because the school authorities failed to provide Justyn the opportunity to have his suspension stayed pending appeal, they failed to comply with the statute. A failure to follow procedural rules does not by itself, however, violate constitutional due process. *See Derrickson v. Board of Education*, 703 F.2d 309, 315 (8th Cir.1983) (deviation from school board regulations in decision to dismiss probationary teachers did not violate the teachers' right to constitutional due process). For that reason, I concur in the result.