Erik KORTE, Appellant,

v.

The CURATORS OF the UNIVERSITY OF MISSOURI, William Crist, and Rachel Brown, Respondents.

No. WD 71241.

Missouri Court of Appeals, Western District.

May 18, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 29, 2010.

Application for Transfer Denied Aug. 31, 2010.

George S. Smith, COlumbia, MO, for appellant.

Phillip J. Hoskins, Columbia, MO, for respondents.

Before Division Three: JAMES M. SMART, JR., Presiding Judge, JOSESPH M. ELLLIS, Judge and GARY D. WITT, Judge.

GARY D. WITT, Judge.

Erik Korte appeals the judgment of the circuit court, which after a bench trial, denied his requested relief against the Curators of the University of Missouri, William Crist, and Rachel Brown ("University"), after Korte was expelled from the University based on a finding of misconduct. We affirm.

## Factual Background

The relevant facts on appeal are mostly undisputed. In 2007, Korte was a student in good standing at the University's School of Medicine when it was alleged that he violated the University's Honor Code. Korte does not dispute that while he was the Class Treasurer for the School of Medicine, he misappropriated funds from the class checking account. Specifically, Korte wrote two checks from this account for a total amount of $3,500.00 that he placed into his own checking account and spent for his own personal benefit. Korte attempted to withdraw an additional $2,000.00 from this account but was unsuccessful because the class checking account had insufficient funds.

When this matter was first discovered by the University, a hearing was held by the Honor Council because it has jurisdiction over both academic and professional dishonesty, as well as overall medical student conduct. Korte was present during the hearing; however, he declined to have an "advisor" present or cross-examine relevant witnesses, as he had the right to do under the Honor Code. Korte admitted that he took the funds because he could not afford "a necessary but non-emergent surgery" to correct his bite and jaw alignment but that he intended to repay the money in full before anyone discovered that it was missing. By the time the hearing occurred, Korte had returned the $3,500.00.

After the hearing, the Honor Council found that Korte's conduct violated the Honor Code and made nine "recommendations" as to Korte's punishment. The Honor Council did not recommend that Korte be dismissed from the University.

Pursuant to the University's Honor Code, the aggrieved student or the Associate Dean for Student Programs is empowered to appeal any disciplinary action taken by the Honor Council. In her role as the Associate Dean for Student Programs, Rachel Brown exercised her right to appeal the Honor Council's Report as it pertained to the sanctions for Korte's misconduct. According to the University's Honor Code, this appeal was to be presided over by a three member committee ("Committee") composed of the Dean of the School of Medicine (William Crist) and two members of the faculty (Dr. Ted Groshong and Dr. David Fleming).

Subsequently, the Committee had a meeting wherein they decided to seek advice from the University's Committee on Student Promotions ("CSP") prior to ruling on the merits of the appeal. Prior to this matter, Dean Crist had routinely sought the recommendation of the CSP before making a decision on student discipline.

Korte was notified by certified mail that a hearing pertaining to the appeal would be held by the CSP. Korte attended the CSP's hearing, read a prepared statement, and answered questions from the CSP's committee members. Korte admitted at the hearing that his conduct violated the Honor Code and also stated that he understood that he could be dismissed from the University for violating the Honor Code. After the conclusion of this hearing, eight members of the CSP voted to recommend dismissal of Korte from the University, three members voted against recommending dismissal, and one member abstained.

After receiving this recommendation from the CSP, Dean Crist convened a meeting of the Committee in order to make a final ruling on the appeal. The Committee decided that Korte was to be dismissed from the University based on his Honor Code violations, and Korte was provided written notice of the decision.

Thereafter Dean Crist met with Korte and Korte's parents because they wanted to persuade the Dean to reconsider the Committee's decision. After this meeting, Dean Crist informed Korte in writing that the Committee's decision to dismiss him from the University was final. Korte subsequently appealed the Committee's decision to the Chancellor of the University, and the Chancellor also denied his appeal.

Korte filed his Amended Petition for Declaratory Relief, Temporary Restraining Order, Preliminary Injunction and Permanent Injunction in Boone County Circuit Court. In Count One, Korte requested a declaratory judgment finding that the University had violated Korte's Fourteenth Amendment right to procedural due process pursuant to 42 U.S.C. Section 1983. Count Two alleged that the doctrine of "administrative collateral estoppel" barred the Committee from reconsidering the Honor Council's recommendations as to Korte's punishment. Count Three requested a Temporary Restraining Order and Injunctive Relief, based on the aforementioned theories of relief, which would allow Korte to resume his education at the University.

Both Korte and the University submitted evidence at trial, and various witnesses were called to testify including Korte, Dean Crist, and Dean Brown. The trial court issued its judgment denying Korte's requested relief and set forth detailed findings of fact and conclusions of law. Korte now appeals.

## Standard of Review

The Supreme Court of Missouri recently outlined our applicable standard of review:

This Court's review is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). This Court will affirm the judgment of the trial court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law, accepting all evidence and inferences therefrom in the light most favorable to the prevailing party and disregarding all contrary evidence. Further, on appeal of a court-tried case, the appellate court defers to the trial court on factual issues because it is in a better position not only to judge the credibility of witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record.

*Essex Contracting, Inc. v. Jefferson County*, 277 S.W.3d 647, 652 (Mo. banc 2009) (citations omitted) (internal quotation marks omitted).

## Analysis

In Point One, Korte argues that the "trial court erred in granting judgment in favor of Defendants because the Defendants violated constitutional guarantees of due process under 42 U.S.C. Section 1983 ... in that the Defendants' failure to abide by its own rules and regulations governing a disciplinary dismissal deprived Plaintiff of his constitutionally protected interests."

■ The Due Process Clause is implicated by higher education disciplinary decisions because such students possess a "constitutionally protectable property right" in their continued enrollment in a university. *Regents of the Univ. of Mich. v. Ewing*, 474 U.S. 214, 223, 106 S.Ct. 507, 88 L.Ed.2d 523 (1985); *see also Bd. of Curators of the Univ. of Mo. v. Horowitz*, 435 U.S. 78, 84–85, 98 S.Ct. 948, 55 L.Ed.2d 124 (1978).

■ "Once it is established that an interest is subject to due process protection, the question remains what process is due." *Reasoner ex rel. Reasoner v. Meyer*, 766 S.W.2d 161, 163 (Mo.App. W.D.1989) (cit-

ing *Goss v. Lopez,* 419 U.S. 565, 577, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975)). Because Korte's case is a "disciplinary" matter based on misappropriating funds rather than an academic one, we conduct a more searching inquiry. *State ex rel. Yarber v. McHenry,* 915 S.W.2d 325, 329 (Mo. banc 1995) (citing *Horowitz,* 435 U.S. at 89–91, 98 S.Ct. 948). This is because disciplinary matters, being more objective in nature and not dependent upon the analytical expertise of professional academicians, will bear a resemblance to traditional judicial and administrative fact finding and thus are more capable of judicial review. *Horowitz,* 435 U.S. at 89–90, 98 S.Ct. 948.

At the same time, the Eighth Circuit has outlined the deference we owe to institutions of higher learning when making disciplinary determinations:

> In examining Woodis' § 1983 claim, certain principles particular to the school setting guide our analysis. Although students do not "shed their constitutional rights ... at the school house gate," *Tinker v. Des Moines Independent Community School Dist.,* 393 U.S. 503, 506, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), the Supreme Court has observed that "maintaining security and order in the schools requires a certain degree of flexibility in school disciplinary procedures, . . . ." *New Jersey v. T.L.O.,* 469 U.S. 325, 340, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985). Given the flexibility afforded schools in this area, we must "enter the realm of school discipline with caution," *Stephenson v. Davenport Community School Dist.,* 110 F.3d 1303, 1306 (8th Cir.1997), and we must exercise "care and restraint" in reviewing Westark's discretionary decision to expel Woodis from the school's nursing program. *Epperson v. Arkansas,* 393 U.S. 97, 104, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968).

*Woodis v. Westark Cmty. Coll.,* 160 F.3d 435, 438 (8th Cir.1998).

▇ There are two basic due process requirements: (1) notice and (2) an opportunity to be heard. *Reasoner,* 766 S.W.2d at 163 (citing *Goss,* 419 U.S. at 582, 95 S.Ct. 729). Disciplinary hearings against students are not criminal trials and need not take on the formalities of such trials. *Id.* at 164

▇ With these principles in mind, we turn to Korte's overarching allegation in his first point that the University failed "to abide by its own rules and regulations governing a disciplinary dismissal" when expelling Korte from the University and this violation deprived him of constitutionally protected interests. While he alleges that the University violated "internal policies and written procedures," Korte fails to identify which policies or procedures were in fact violated. "Rule 84.04(d) requires that, in addition to stating the challenged decision of the trial court and the legal basis for claiming reversible error, a point relied on must state facts that demonstrate how, in the context of the case, the trial court erred." *Vestin Realty Mortgage I, Inc. v. Pickwick Partners, L.L.C.,* 279 S.W.3d 536, 539 (Mo.App. W.D.2009). This Court will not speculate as to which policies or procedures Korte believed were violated by the University because to do so would be impermissible advocacy by this Court. *Id.*; *White,* 293 S.W.3d at 13.

▇ Korte asserts that at trial he adduced evidence that supported the "only reasonable inference" that Defendants Crist and Brown wanted a harsher penalty than the Honors Committee recommended and were determined to impose the severest penalty possible. The gravamen of Korte's argument in Point One is that because of Dean Crist and Dean Brown's bias, Korte's fate was predetermined, and

therefore Korte's hearings before the University's administrative bodies were a pretense or sham and were neither fair nor meaningful and violated due process. "Of all the rights encapsulated within due process, the requirement of an impartial decision-maker is the most important because without that right, the other rights become meaningless." *Stonecipher v. Poplar Bluff R1 Sch. Dist.*, 205 S.W.3d 326, 329 (Mo. App. S.D.2006) (internal quotation marks omitted).

■ In denying Korte's claims, the trial court found that "no procedural or substantive due process rights guaranteed by the 5th and 14th amendments to the United States Constitution have been denied Plaintiff by the Defendants." The trial court had the opportunity to hear both Dean Crist and Dean Brown testify regarding their respective role at the University in ensuring that Korte was properly disciplined for his misconduct. Korte does not dispute that the University's Honor Code expressly provided that Dean Brown was permitted to appeal the decision of the Honor Council to the Committee compromising of Dean Crist and two other faculty members. Nor does Korte dispute that Dean Crist *voluntarily* chose to refer the matter to the Committee on Student Promotions for their independent assessment of the matter, regardless of the fact that the University's Honor Code did not require such due process. In arguing that Dean Crist and Dean Brown were pre-disposed to dismiss him from the University, Korte ignores the fact that they testified to the contrary at trial and that we "defer [ ] to the trial court on factual issues because it is in a better position not only to judge the credibility of witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be com-

pletely revealed by the record." *Essex Contracting, Inc.*, 277 S.W.3d at 652.

In arguing that the University's proceedings were a sham, Korte makes allegations on appeal that are not supported by the record. For example, Korte contends that Dean Crist "admitted he had not followed the appellate procedures of the Honor Code," but we see no such admission by Dean Crist in Korte's citations to the transcript. Korte has failed to demonstrate that the trial court somehow erred in concluding that he received the due process he was entitled to receive or that this conclusion by the Court was somehow against the weight of the evidence.

The second and final argument Korte makes in Point One is that Dean Brown's dual role as an advisor to Korte and as "a partisan facilitator for much of the [University's] actions" made Dean Brown "less than impartial." It is true that Korte demonstrated at trial that Dean Brown advised Korte during the administrative disciplinary process in her role as Associate Dean for Student Programs. We do not find this fact inherently troubling however because, while it was Dean Brown who decided to appeal the decision of the Honor Council, she was not part of the Committee that ultimately decided upon the merits of whether to terminate Korte from the University. Korte has also failed to demonstrate that Dean Brown's role as an advisor acted to prejudice Korte in any way.

The Eighth Circuit has held that in the realm of discipline at institutions of higher learning, a student is only entitled to "adequate notice, definite charge, and a hearing with opportunity to present one's own side of the case and with all necessary protective measures." *Woodis*, 160 F.3d at 440 (internal quotation marks omitted). For all of the aforementioned reasons, we believe the trial court did not err in con-

cluding that Korte received all the procedural due process he was entitled to before the University expelled him as a student.[1]

Point One is denied.

In Point Two, Korte argues that the trial court erred in refusing to grant injunctive relief because the University "took actions outside the authority granted them under the Honor Code by reversing the HC's decision absent any finding of error."

Here, the Commission agreed with the Honor Council that Korte's actions violated the Honor Code but disagreed with the Honor Council's recommended punishment. Korte asserts that, in order to do so, the Commission must have found some error in the actions or findings of the Honor Council. The Honor Code does not set forth the standard of review that is to be applied by the Commission and does not require any deference be given to the Honor Council's findings or conclusions. Korte insinuates that the Board was somehow required to make a "finding of error" when reversing the Honor Council's recommendation, but nowhere in the Honor Code is such a requirement codified. Korte's argument that "expulsion is the most severe penalty that can be imposed on a student" does not, by itself, demonstrate an entitlement to relief on appeal.

In rejecting Korte's claim, the trial court found that the Committee was not materially and substantively outside its authorized scope of review. Even if we agreed that the actions of the Commission somehow deviated from the internal procedures of the University, we do not find that this deviation entitles Korte to relief.

Noncompliance with its own procedures does not constitute a due process violation if the hearing provided exceeds the process constitutionally required. *Schuler v. Univ. of Minn.*, 788 F.2d 510, 515 (8th Cir.1986). Korte was provided notice and multiple opportunities to be heard, and the punishment imposed was within the range of punishment authorized by the Honor Code. We therefore conclude that Korte has failed to demonstrate that the trial court's findings and conclusion in this regard were somehow in error.

Point Two is denied.

In Point Three, Korte argues that the trial court erred in failing to grant him relief because the Commission improperly substituted its judgment for that of the Honor Council. We disagree.

The trial court concluded, in denying this claim, that the "Honor Code of the School of Medicine was not materially and substantively violated by the action of the Dean and/or the three-member appellate committee's substitution of its judgment for the sentence of the Honor Council."

Simply put, Korte fails to cite any persuasive authority that the Commission was *not* allowed to substitute its judgment for that of the Honor Council. As analyzed in detail in Point Two, nothing in the Honor Code prevents the Commission from substituting its judgment as it pertains to "the Honor Council's sentence" when reviewing the Honor Council's findings. Moreover, in deciding Korte's punishment for his Honor Code violations, the Honor Council made clear that its nine findings were "recommendations," which

---

1. Korte argues on appeal that the trial court erred in failing to award him attorney's fees and injunctive relief pursuant to his procedural due process claim. However, because we affirm the judgment of the trial court, it goes without saying that the trial court did not err in failing to grant such relief in that he was not the "prevailing party" and thus was entitled to no relief.

certainly put Korte on notice that they were subject to review.

To support his argument that the Commission was not allowed to substitute its judgment for the Honor Council's, Korte cites to the following unpersuasive authority:

"It is not the appellate court's function to substitute its judgment for that of the jury." *State v. Community Alternatives Mo., Inc.,* 267 S.W.3d 735, 743 (Mo.App. S.D.2008). "As long as the record contains credible evidence upon which the fact finder could have formulated its beliefs, this court will not substitute its judgment for that of the trial court." *Alongi v. Alongi,* 72 S.W.3d 592, 597 (Mo.App. W.D.2002).

Br. 27–28.

This is not an appeal from an administrative agency which requires deference to the factual findings of the agency. This is an appeal from a trial court's judgment from a separate civil action filed by Korte. The Honor Council is neither a jury nor a trial court that is somehow owed deference as a matter of law. This Court notes that it is the *trial court,* not the Honor Council or the Commission, that is entitled to deference pursuant to our applicable standard of review. *Essex Contracting, Inc.,* 277 S.W.3d at 652.

■ Finally, while Korte concedes on appeal that the University's process is outside the bounds of state administrative law, Korte persists in arguing that Missouri law pertaining to the Personnel Advisory Board (Section 36.380)[2] somehow requires reversal of the trial court's judgment. We need not be detained by this argument because it is clear that the University was not required to follow state law pertaining to the administration of state personnel for numerous reasons, including the fact that Korte was a student and not an employee of the University.

Point Three is denied.

In Point Four, Korte argues that the Defendants are collaterally estopped and bound by the decision of the Honor Council.

■ The following four elements constitute a cognizable collateral estoppel claim, all of which must be pled and proven to entitle a party to relief:

(1) the issue decided in the first action must be identical to the issue in the second action; (2) the prior litigation must have resulted in a final judgment on the merits; (3) the party to be estopped must have been a party or in privity with a party to the prior adjudication; and (4) that party must have had a full and fair opportunity to litigate the issue in the prior suit.

*Fischer ex rel. Scarborough v. Fischer,* 34 S.W.3d 263, 265 (Mo.App. W.D.2000).

■ We believe that the second element is dispositive of Korte's collateral estoppel claim because the initial determination and recommendation by the Honor Council was not a "final judgment," that precluded the University from exercising its right of appeal under the University's Honor Code. The Honor Council's recommendations were not a "final judgment," because they are subject to appeal. As a practical matter, Korte himself was also entitled to appeal them, and we presume Korte *would* have appealed if the Honor Council had recommended his expulsion from the University.

---

**2.** All statutory citations are to RSMo 2000 as amended through the 2009 Cumulative Supplement, unless otherwise indicated.

Korte cites no authority for the proposition that when a party has an established right to appeal, the doctrine of collateral estoppel can be used as a tool by the opposing party to preclude and prevent that appeal. As Korte was free to appeal the trial court's instant judgment that denied him relief after a trial, the University was not barred from appealing the Honor Council's recommendations pursuant to the doctrine of collateral estoppel.

Point Four is denied.

■ Finally, in Point Five, Korte argues that the trial court erred because its judgment "failed to provide any basis for its conclusion of the specific fact issues raised, and it contained no grounds for its decision pursuant to Plaintiff's Rule 73.01(c) request which contained specific requests for findings of fact on Plaintiff's legal claims." We disagree.

Korte made a written request pursuant to Rule 73.01 that required the trial court to make written findings of fact in its judgment. It is undisputed that the Court in fact made voluminous findings of fact in its judgment rejecting Korte's claims. Korte fails to point to any element of his claims for which the trial court neglected its duty. We therefore are at a loss as to why Korte believes he is entitled to relief on appeal in this regard.

For example, Korte puts forth the conclusory assertion that:

The court's findings of fact in paragraphs 40 through 57, which ostensibly address the specific facts issues raised in Plaintiff's 73.01(c) request, fail to provide any basis for concluding that the Defendant[s] actions were within the scope of authority granted them under the Honor Code and the University's Collected Rules and Regulations and not harmful to Plaintiff.

But in each of the preceding four Points Relied On, this Court has outlined the relevant findings of fact made by the trial court that supported the Court's conclusion that Korte was not entitled to relief. Korte concedes that " '[a]ll that Rule 73.01 requires is that the court make a statement of the grounds for its ultimate decision,' " yet he ignores that this is precisely what the trial court did. *Cohen v. Cohen,* 178 S.W.3d 656, 663 (Mo.App.2005) (quoting *Dorman v. Dorman,* 91 S.W.3d 167, 171 (Mo.App.2002)).

Finally, we believe that this argument fails under our applicable standard of review, because it is *Korte's* burden to demonstrate that the trial court's Judgment was somehow deficient, thus entitling him to relief. *Essex Contracting, Inc.,* 277 S.W.3d at 652. Here, Korte does not even attempt to explain why the specific findings of fact made by the court were somehow deficient beyond making a broad based claim that is so vague that it does not even include any of pertinent language from the Judgment in order to demonstrate how it is deficient.

Most importantly, for the aforementioned reasons, we find that the findings of fact and the conclusion of law contained in the Judgment were legally sufficient as a matter of law pursuant to Rule 73.01.

Point Five is denied.

### Conclusion

The judgment of the circuit court, denying Korte's claims, is hereby affirmed.

All concur.